UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

OMIMEX ENERGY, INC., et al.,

      Plaintiffs,

v.                                                                                          Case No. 5:06-CV-68

JOYCE G. BLOHM,                                                             HON. GORDON J. QUIST

      Defendant.

_____/

# **OPINION**

      Plaintiffs, various business entities and individuals, have filed this diversity action against Defendant asserting claims based upon a mineral deed dated April 16, 1983 (the "Mineral Deed") conveying an interest in the oil, gas, and other minerals in certain property located in Oceana County, Michigan.[1] In their amended complaint, Plaintiffs assert two claims.[2] The first claim (Count I) seeks a declaratory judgment determining and declaring the parties' respective rights and interests with regard to the Mineral Deed, and the second claim (Count II) requests that the Court quiet title to the mineral interest in the property and declare that the Mineral Deed has been extended as a result of certain events and that Plaintiffs are the owners of the 100/200 oil and gas interest in the property. Now before the Court is Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(c) on the grounds that the amended complaint fails to state a claim and that Plaintiffs have failed to properly

---

[1] Plaintiffs' original complaint named Joyce G. Blohm and Gregg Golladay as defendants. By Order dated July 28, 2006, the Court ordered that Gregg Golladay be considered a party Plaintiff for all purposes in this matter.

[2] Plaintiffs filed their amended complaint on June 5, 2006, in response to the Court's May 15, 2006, Order identifying deficiencies in Plaintiffs' allegations regarding the citizenship of certain Plaintiff corporations and limited liability companies.

show that the amount in controversy exceeds $75,000, as well as Defendant's motion for summary judgment. For the reasons set forth below, the Court will deny both motions.

## I. Facts

On April 16, 1983, Defendant Joyce C. Blohm and her husband, Homer E. Blohm (who died in 2006), executed the Mineral Deed in favor of Miller Brothers Oil Corporation, as the grantee, conveying "an undivided 100/200 interest in and to all of the oil, gas and other minerals in and under" property described as "Section 11: N/2 of SW/4; S/2 of NW/4; and NE/4 of NW/4" located in Claybanks Township, Oceana County, Michigan. The Mineral Deed further provided that the conveyance was "for a term of 20 years or as long thereafter as oil, gas or other hydrocarbons are being produced from wells drilled during the 20 year term." It is undisputed that no well was ever physically drilled on the property covered by the Mineral Deed during the 20-year term following the execution of the Mineral Deed.

At the time the Blohms signed the Mineral Deed, a Niagaran formation well known as the Miller-Fox 1-11 Well was in existence on the 80-acre parcel of property located immediately to the south of the property covered by the Mineral Deed, described as the South ½ of the Southwest 1/4 of Section 11, Township 13 North, Range 18 West, Oceana County. The Miller-Fox 1-11 Well was drilled in 1980, and at the time the Blohms executed the Mineral Deed, Amoco Production Company operated the well. Plaintiff Omimex Energy, Inc. currently operates the well.

On April 18, 1983, two days after the Blohms signed the Mineral Deed, the Supervisor of Wells held a public hearing on Amoco Production Company's application to establish a 180-acre unit for the Claybanks 11-13N-18W Niagaran Formation Pool, which was discovered by the Miller-Fox 1-11 Well. Homer Blohm and a representative of Miller Brothers Oil Company appeared at the

2

hearing to contest Amoco's application. Amoco's request sought to combine the existing 80-acre parcel upon which the Miller-Fox 1-11 Well was situated with the 80-acre parcel immediately to the north, described as the North ½ of the Southwest 1/4, and included in the property covered by the Mineral Deed. On May 9, 1983, the Supervisor of Wells issued an opinion and order granting Amoco's application based upon his finding that the Miller-Fox 1-11 Well would adequately drain the proposed 160-acre unit. Thus, the North ½ of the Southwest 1/4 was added to the existing unit for the Miller-Fox 1-11 Well. The Supervisor of Wells order stated that it addressed only the appropriate spacing for the well and was not a determination of a method of participation or allocation of proceeds, nor was it intended to pool the interests within the unit.

Following the order unitizing the Miller-Fox 1-11 well, the Blohms entered into various agreements with Miller Brothers Oil Corporation and/or other entities and individuals covering the Southwest 1/4 (or portions thereof) and the Northwest 1/4 of Section 11, Township 13N, Range 18W, Oceana County, Michigan. On March 9, 1984, the Blohms and Miller Brothers Oil Corporation entered into an oil and gas lease of all of the property covered by the Mineral Deed.

On February 1, 1987, Miller Brothers Co-Partnership, the Blohms, and others, executed a Declaration of Pooling (the "Pooling Agreement"), pursuant to which the parties agreed to pool or "unitize" their interests with regard to the Salina-Niagaran Formation underlying the "Southwest Quarter (SW 1/4), Section 11, T13N-R18W, Oceana County, Michigan." The introductory statement of the Pooling Agreement states: "WHEREAS, the above parties are the Owners of the following described Oil and Gas Leases[, including the March 9, 1984, oil and gas lease between the Blohms and Miller Brothers Oil Corporation] or own a mineral interest in the" lands covered by the Pooling Agreement. Paragraphs 1 and 2 provide:

3

> 1. All interests of the parties hereto in the Unitized Substances underlying the Unitized Area are hereby pooled, consolidated and unitized into a single pooled unit for the operation for and the development and production of the Unitized Substances from the Unitized Area.
>
> 2. Any well drilled on any part of the Unitized Area for the discovery and production of Unitized Substances, *whether now drilling or heretofore or hereafter drilled*, and all operations with respect to any such well, *shall be considered for all purposes, except the payment of royalty, to be a well drilled and operations conducted under the terms of each of the leases described above.*

(Pooling Agreement ¶¶ 1, 2 (italics added).) On May 21, 1987, the Blohms and Miller Brothers Co-Partnership entered into an oil and gas lease covering the North ½ of the Southwest 1/4 of Section 11 – the 80-acre parcel included in the Mineral Deed that had previously been combined into the 160-acre drilling unit for the Miller-Fox 1-11 Well.

Subsequently, Conoco, Inc. succeeded to Miller Brothers Co-Partnership's rights under the 1987 oil and gas lease, and on January 9, 1989, Conoco, the Blohms, and other parties executed an amendment to the Pooling Agreement (the "Amendment"). Among other things, the Amendment recites that "Conoco owns a 50% of 100% fee mineral interest" in the North ½ of the Southwest 1/4 below the base of the Traverse Lime Formation, Township 13 North, Range 18 West, that "Conoco desires to contribute its fee mineral interest to the pooled unit," and that the parties desired to substitute the 1987 oil and gas lease between the Blohms and Miller Brothers Co-Partnership for the 1984 oil and gas lease between the Blohms and Miller Brothers Oil Corporation.

Plaintiffs allege that they have succeeded to all of the rights and interests of Miller Brothers Oil Corporation and Miller Brothers Co-Partnership under the Mineral Deed, the 1984 oil and gas lease, the 1987 oil and gas lease, and the Pooling Agreement, as well as Conoco's rights under the Amendment. Plaintiffs have filed this action seeking a determination of whether the interest granted

4

by the Mineral Deed terminated and reverted to the Blohms as of April 16, 2003, as Defendant contends, or whether the fee mineral interest did not terminate at the end of the primary 20 year term, but rather, was extended by subsequent events, as Plaintiffs argue.

## II. **Motion Standards**

As noted above, Defendant has moved for dismissal under Fed. R. Civ. P. 12(c) and for summary judgment under Rule 56. A motion pursuant to Rule 12(c) may be brought after the close of the pleadings to raise various Rule 12(b) defenses. See Alexander v. City of Chicago, 994 F.2d 333, 335 (7th Cir. 1993). As with a Rule 12(b)(6) motion, a court must examine only the pleadings and accept all of the non-movant's allegations as true in ruling on a Rule 12(c) motion. See St. Paul Ins. Co. v. AFIA, 937 F.2d 274, 279 (5th Cir. 1991). A motion for judgment on the pleadings may be granted only where "it appears beyond doubt that the plaintiff cannot prove any set of facts that would support his claim for relief." Thomason v. Nachtrieb, 888 F.2d 1202, 1204 (7th Cir. 1989). If matters outside of the pleadings are considered, the Court must treat the motion as a motion for summary judgment under Rule 56. See Fed. R. Civ. P. 12(c); Latecoere Int'l v. United States Dep't of the Navy, 19 F.3d 1342, 1356 (11th Cir. 1994).

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. Id.

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to

find for the non-moving party." Agristor Fin. Corp. v. Van Sickle, 967 F.2d 233, 236 (6th Cir. 1992) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

### III.  Discussion

**A.     Motion for Judgment on the Pleadings**

Defendant cites two grounds in support of her motion for judgment on the pleadings. First, she contends that the amended complaint fails to state a claim because Plaintiffs did not comply with M.C.R. 3.411(C), which provides that in any action under M.C.L.A. § 600.2932 to determine interests in land, i.e., to quiet title, "[t]he plaintiff must attach to the complaint . . . a statement of the title on which the pleader relies, showing from whom the title was obtained and the page and book where it appears of record." Second, Defendant contends that the Court lacks jurisdiction because Plaintiffs failed to allege that any single Plaintiff has a claim in excess of $75,000.[3]

With regard to Defendant's failure to state a claim argument, the Court, having reviewed the allegations of the amended complaint, concludes that Plaintiffs have stated a claim for declaratory relief under 28 U.S.C. § 2201 because the parties' dispute regarding the Mineral Deed presents "a case of actual controversy" within the Court's jurisdiction. Plaintiffs' allegations also provide an adequate basis for a quiet title action under M.C.L.A. § 600.2932 because Plaintiffs and Defendant assert conflicting interests. Moreover, the Court rejects Defendant's argument that Plaintiffs were required to comply with M.C.R. 3.411(C)(2) in filing their complaint. "Federal courts considering non-federal questions [in diversity cases] apply federal rules of procedure, and follow state law to

---

[3]Although Defendant cites Rule 12(c) as the basis for her motion to dismiss for lack of jurisdiction, such a motion is more properly brought under Rule 12(b)(1) for lack of subject matter jurisdiction.

6

resolve issues of substance." Sayre v. Musicland Group, Inc., 850 F.2d 350, 352 (10th Cir. 1988) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817, 822 (1938)). See also Nautilus Ins. Co. v. Nevco Waterproofing, Inc., No. Civ. A H-04-2986, 2005 WL 1847094, at *2 (S.D. Tex. Aug. 3, 2005) ("Federal courts apply federal rules of procedure and state substantive law in cases brought under federal courts' diversity jurisdiction.") (citing Utica Lloyd's of Tex. v. Mitchell, 138 F.3d 208, 210 (5th Cir. 1998)). Plaintiffs were thus not required to comply with M.C.R. 3.411(C)(2). Moreover, even if the Court were to conclude that M.C.R. 3.411(C)(2) applied in this case, the Court would afford Plaintiffs the opportunity to comply by amending their complaint, rather than dismissing it for non-compliance. Of course, in order to prove their claims, Plaintiffs must, at some point present evidence to establish their chain of title, but there is no requirement in the Federal Rules of Civil Procedure that they do so at the pleading stage.

The Court also rejects Defendant's argument that it lacks subject matter jurisdiction. In determining whether the $75,000 jurisdictional threshold is met, a federal court looks to the amount alleged in the complaint, unless it appears that the plaintiff in good faith cannot meet that amount. See Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353, 81 S. Ct. 1570, 1573 (1961). Thus, this Court "should consider the amount alleged in a complaint and should not dismiss a complaint for lack of subject matter jurisdiction unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount." Mass. Cas. Ins. Co. v. Harmon, 88 F.3d 415, 416 (6th Cir. 1996) (internal quotations omitted). Here, Plaintiffs have alleged that the jurisdictional amount is satisfied "because the value of the mineral interest in question greatly exceeds $75,000." (Am. Compl. ¶ 21.)

Defendant does not contend that the value of the undivided mineral interest is less than $75,000. She argues, however, that Plaintiffs' jurisdictional allegations are defective because Plaintiffs fail to allege that the value of any single Plaintiff's interest exceeds $75,000, as required by Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 125 S. Ct. 2611 (2005). Even if, as Plaintiffs appear to concede, no single Plaintiff's interest exceeds $75,000, Plaintiffs correctly note that multiple plaintiffs are entitled to aggregate their claims where they unite to enforce a single right in which they have a common and undivided interest. As the Sixth Circuit has stated, "[t]he general rule is that while separate and distinct claims may not be aggregated, aggregation is permissible when 'two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest.'" Sellers v. O'Connell, 701 F.2d 575, 579 (6th Cir. 1983) (quoting Snyder v. Harris, 394 U.S. 332, 335, 89 S. Ct. 1053, 1056 (1969)). "Aggregation is permitted 'where there is *not only* a common fund from which the plaintiffs seek relief, but where the plaintiffs *also have a joint interest in that fund,* such that if plaintiffs' rights are not affected by the rights of co-plaintiffs then there can be no aggregation. In other words, the obligation to the plaintiffs must be a joint one.'" Everett v. Verizon Wireless, Inc., No. 05-3557, 2006 WL 2465629, at *4 (6th Cir. Aug. 28, 2006) (quoting Eagle Star Ins. Co. v. Maltes, 313 F.2d 778, 781 (5th Cir. 1963)). "The 'paradigm "common fund" cases' thus involve 'claims to a piece of land, a trust fund, an estate, an insurance policy, a lien, or an item of collateral, which they claim as common owners or in which they share a common interest arising *under a single title or right*.'" Id. at *5 (quoting Gilman v. BHC Sec., Inc., 104 F.3d 1418, 1424 (2d Cir. 1997)).

In this case, Plaintiffs allege that they are the successors in interest to the original grantees under the Mineral Deed, the 1984 oil and gas lease, the 1987 oil and gas lease, the Pooling

8

Agreement, and the Amendment. (Am. Compl. ¶¶ 17, 27, 42.) Because Plaintiffs seek a determination that the Mineral Deed did not terminate at the end of the initial 20-year term but, instead, was extended as a result of subsequent events, the Court concludes that Plaintiffs are seeking to enforce their common and undivided interest in those conveyances and agreements and, thus, are permitted to aggregate their interests to meet the jurisdictional threshold. See Rocket Oil & Gas Co. v. Arkla Exploration Co., 435 F. Supp. 1303, 1305 (W.D. Okla. 1977) (concluding that the plaintiff class members were entitled to aggregate their claims where they asserted claims based upon a common and undivided 1/8 royalty interest in all of the gas produced from a pooled formation by virtue of the communitization of their fractional mineral interests under a pooling order); Roberson v. Jim Walter Homes, Inc., No. Civ A. 100CV108-D-D, 2000 WL 798826, at *2 n.2 (N.D. Miss. June 2, 2000) (allowing aggregation where both plaintiffs were seeking to enforce their joint interest in the contract at issue). Accordingly, the Court concludes that Plaintiffs have demonstrated that the amount in controversy exceeds $75,000 for purposes of defeating Defendant's Rule 12(c) motion.

One additional point that merits brief attention in connection with Defendant's Rule 12(c) motion for judgment on the pleadings is Defendant's argument that Plaintiffs have not presented evidence showing their chain of title, while Defendant has done so in presenting her opening brief. As discussed above, there is no requirement under the Federal Rules of Civil Procedure that a plaintiff attach to the complaint evidence of his or her chain of title in a quiet title action. Because Defendant brought her motion as a motion under Rule 12(c), it was based solely upon the pleadings, and Plaintiffs were not required to respond with evidence of their chain of title. Nonetheless,

Plaintiffs are in the best position to furnish such evidence and will ultimately be required to do so in order to succeed on their claims.[4]

**B.      Motion for Summary Judgment**

Defendant contends that she is entitled to summary judgment because the Mineral Deed provides that its grant is for 20 years unless "oil, gas or other hydrocarbons are being produced from wells drilled during the 20 year term," and no well was drilled on the subject property during the 20 year term. Thus, Defendant argues, the interest reverted to her and her husband in April 2003.

The rules of construction for deeds are similar to those for construction of contracts. Where the language of the deed or contract is unambiguous, a court's role is limited to determining the intention of the parties from the four corners of the document by applying the plain meaning of the language used in the document. See Taylor v. Taylor, 310 Mich. 541, 545, 17 N.W.2d 745, 746 (1945); Old Kent Bank v. Sobczak, 243 Mich. App. 57, 63, 620 N.W.2d 663, 666-67 (2000). The primary goal of interpreting contracts is to ascertain and enforce the parties' intent. See Flajole v. Gallaher, 354 Mich. 606, 251, 93 N.W.2d 249, 251 (1958). If the language of the instrument is unambiguous, its meaning is a question of law for the court. See Port Huron Ass'n, MEA/NEA v. Port Huron Area Sch. Dist., 452 Mich. 309, 323, 550 N.W.2d 228, 237 (1996). If the language of the instrument is unclear or susceptible to multiple meanings, then interpretation becomes a question of fact. See id.

---

[4]Although Defendant points out, correctly, that the Mineral Deed and the 1984 oil and gas lease were between the Blohms and Miller Brothers Oil Corporation and that Miller Brothers Co-Partnership (or its successor) was the party to the 1987 oil and gas lease, the Pooling Agreement, and the Amendment, the Court need not distinguish between the two entities at this juncture because Plaintiffs have viable arguments regarding extension of the Mineral Deed under documents involving both entities, which the Blohms signed.

The relevant language of the Mineral Deed is clear and unambiguous. It provides that the grant of the fee simple mineral interest is "for a term of 20 years or as long thereafter as oil, gas or other hydrocarbons are being produced or are capable of being produced from wells drilled during the 20 year term." According to this language, the term of the Mineral Deed would be extended beyond its initial 20-year term only if at least one well capable of producing oil or gas from the subject property were drilled during that period. It is undisputed that no well, whether on the subject property or on the adjacent 80-acre parcel (the South ½ of the Southwest 1/4), was drilled during the 20-year term. Thus, if these were the only facts before the Court, Defendant would be entitled to summary judgment, including a declaration that the interest granted under the Mineral Deed re-vested in the Blohms as of April 2003. However, Plaintiffs point to subsequent events or transactions which, they contend, show that the condition for extending the term was satisfied and/or that the Blohms agreed that the Miller-Fox 1-11 Well, as unitized by the May 19, 1983, order by the Supervisor of Wells, sufficed to fulfill the condition for extending the term of the Mineral Deed.

Plaintiffs' argument that the Supervisor of Wells order, which combined the 80-acre parcel upon which the Miller-Fox 1-11 Well was situated with the 80-acre parcel located immediately to the north and covered by the Mineral Deed, effectively "drilled" a well on part of the land covered by the Mineral Deed has merit but, in light of the language of the Mineral Deed, is not entirely persuasive. On the one hand, Plaintiffs are correct that the Supervisor of Wells order effectively "drilled" a well on part of the property covered by the Mineral Deed because that order determined that the Miller-Fox 1-11 Well would effectively drain the North ½ of the Southwest 1/4 – part of the property covered by the Mineral Deed – and no other well would be necessary. On the other hand,

11

the Miller-Fox 1-11 Well was in existence prior to the commencement of the 20-year term and, thus, no well was actually drilled, as required by the language of the Mineral Deed.

The Court need not base its reasoning upon the Supervisor of Wells order, however, because the subsequently-executed documents suggest that the Blohms and the Miller Brothers entities (including the corporation and the partnership) and their successors in interest considered that the existence of the Miller-Fox 1-11 Well would be considered a well drilled for purposes of the Mineral Deed. The relevant documents show the following:

1. Pursuant to the April 16, 1983, Mineral Deed, the Blohms conveyed to Miller Brothers Oil Corporation one-half of their fee mineral interest in the North ½ of the Southwest 1/4; the South ½ of the Northwest 1/4; and the Northeast 1/4 of the Northwest 1/4, Section 11, Township 13 North, Range 18 West. As a result of the Supervisor of Wells order, the North ½ of the Southwest 1/4, comprising 80 acres, was combined with the 80-acre parcel to the south upon which the Miller-Fox 1-11 Well was situated to constitute a single drilling area.

2. On March 9, 1984, the Blohms signed an oil and gas lease of their interest in the same property covered by the Mineral Deed to Miller Brothers Oil Corporation. Because the Blohms had previously conveyed one-half of their fee mineral interest in that property to Miller Brothers Oil Corporation pursuant to the Mineral Deed, the oil and gas lease could have only conveyed the Blohms' remaining one-half fee mineral interest, as well as their reversionary interest under the Mineral Deed.

3. Pursuant to the Pooling Agreement dated February 1, 1987, to which the Blohms and Miller Brothers Co-Partnership were parties, the March 9, 1984, oil and gas lease was combined with a prior oil and gas lease covering the South ½ of the Southwest 1/4 (the 80-acre parcel upon which the Miller-Fox 1-11 Well was situated) and other mineral interests to form a single pooled unit. Based upon the introductory statements in this agreement, it appears that Miller Brothers Co-Partnership had succeeded to the interests of Miller Brothers Oil Corporation. The Pooling Agreement expressly provided that any well drilled at any time on any part of the unitized property would be a well drilled for purposes of the leases. It also provided that Miller Brothers Co-Partnership would have no obligation to drill any well or wells on any part of the unitized area. Because Miller Brothers possessed a leasehold interest in the Blohms' reversionary interest in the Mineral Deed, it is reasonable to conclude that the parties intended that the Miller-Fox 1-11 Well satisfied the

    condition under the Mineral Deed that a well be drilled during the initial 20-year term.

4. On May 21, 1987, the Blohms signed an oil and gas lease of their interest in the North ½ of the Southwest 1/4 (the portion of the area covered by the Mineral Deed and included in the pooled unit for the Miller-Fox 1-11 Well pursuant to the Pooling Agreement) to Miller Brothers Co-Partnership.

5. On January 9, 1989, the Blohms, Conoco (the successor to Miller Brothers Co-Partnership's interests), and others executed the Amendment, which, among other things, amended the Pooling Agreement to substitute the May 21, 1987, oil and gas lease for the March 9, 1984, oil and gas lease and added Conoco's 50% fee mineral interest in the North ½ of the Southwest 1/4 (which was the same interest granted in the Mineral Deed to Miller Brothers Oil Corporation).

  The above agreements and conveyances show that the effect, or at least the intended effect, was to pool all of the interests in Miller-Fox 1-11 Well unit and that the existence of that well satisfied any drilling obligation that Miller Brothers Oil Corporation or its successors (Miller Brothers Co-Partnership and Conoco) had with respect to the property. This is confirmed by the provision of the Pooling Agreement, affirmed by the Amendment, stating that any well drilled on any part of the unitized area at any time would be considered a well drilled for purposes of the subject leases, and by the provision stating that Miller Brothers Co-Partnership would not be obligated to drill any well or wells on any part of the unitized area. Thus, Plaintiffs have presented sufficient evidence to show that the parties understood that pooling of the South ½ and the North ½ of the Southwest 1/4 to provide a single drilling unit met the condition for extending the initial term of the Mineral Deed.

  Defendant contends that none of the subsequent documents reference the Mineral Deed and, therefore, those documents are irrelevant. While Defendant is correct that the Mineral Deed is not specifically mentioned in the subsequent documents, such a reference is unnecessary in light of the conveyances by the Blohms and the provisions of the Pooling Agreement that recognize the Miller-

Fox 1-11 Well is a well drilled for purposes of the leases (which include the Blohms' reversionary interest in the Mineral Deed) and that relieve Miller Brothers from any obligation to drill a well on the unitized area.  Furthermore, to the extent that Defendant contends that the parol evidence rule bars consideration of the subsequent agreements and conveyances, the argument must be rejected because those agreements are subsequent, not prior or contemporaneous, agreements.

## IV. Conclusion

For the foregoing reasons, the Court will deny Defendant's motions for judgment on the pleadings and for summary judgment.

An Order consistent with this Opinion will be entered.


Dated:  September 19, 2006                                      /s/ Gordon J. Quist
                                                                            GORDON J. QUIST
                                                               UNITED STATES DISTRICT JUDGE