UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

OMIMEX ENERGY, INC., et al.,

      Plaintiffs,

v.                                                                       Case No. 5:06-CV-68

JOYCE G. BLOHM,                                   HON. GORDON J. QUIST

      Defendant.
_____/

## OPINION

      Plaintiffs filed this diversity action against Defendant on May 1, 2006, asserting claims based upon a mineral deed dated April 16, 1983 (the "Mineral Deed") conveying an interest in the oil, gas, and other minerals in certain property located in Oceana County, Michigan. In Count I of their amended complaint, Plaintiffs seek a declaratory judgment determining and declaring the parties' respective rights and interests with regard to the Mineral Deed. In Count II, Plaintiffs request that the Court quiet title to the mineral interest in the property and declare: (i) that the Mineral Deed has been extended as a result of certain events; and (ii) that Plaintiffs are the owners of the 100/200 oil and gas interest in the property. Defendant has asserted a counterclaim against Plaintiffs in which she seeks an order quieting title to the disputed mineral interest in her favor. Presently before the Court are the parties' cross motions for summary judgment. For the following reasons, the Court will grant Defendant's motion for summary judgment and deny Plaintiffs' motion.

### Background and Procedural History

      On April 16, 1983, Defendant Joyce C. Blohm and her husband, Homer E. Blohm (who died in 2006), executed the Mineral Deed in favor of Miller Brothers Oil Corporation, as the grantee,

conveying "an undivided 100/200 interest in and to all of the oil, gas and other minerals in and under" property described as "Section 11: N/2 of SW/4; S/2 of NW/4; and NE/4 of NW/4" located in Claybanks Township, Oceana County, Michigan.  This area, totaling 200 acres, comprised the Blohm family farm.  The Mineral Deed further provided that the conveyance was "for a term of 20 years or as long thereafter as oil, gas or other hydrocarbons are being produced from wells drilled during the 20 year term."  It is undisputed that Plaintiffs are the successors-in-interest to Miller Brothers Oil Corporation of the rights and interests under the Mineral Deed.  It is further undisputed that no well was ever physically drilled on the property covered by the Mineral Deed during the 20 years following the execution of the Mineral Deed.  In fact, to this day, no well has been drilled on that property.

At the time the Blohms signed the Mineral Deed, a Niagaran formation well known as the Miller-Fox 1-11 Well was in existence on the 80-acre parcel of property located immediately to the south of the Blohms' property, described as the South ½ of the Southwest 1/4 of Section 11, Township 13 North, Range 18 West, Oceana County.  Amoco Production Company drilled the Miller-Fox 1-11 Well in 1980 and continued to own it at the time the Blohms executed the Mineral Deed.  Plaintiff Omimex Energy, Inc. currently operates the well.

On April 18, 1983, two days after the Blohms signed the Mineral Deed, the Supervisor of Wells held a public hearing on Amoco's previously-filed application to establish a 160-acre unit for the Claybanks 11-13N-18W Niagaran Formation Pool, which was discovered by the Miller-Fox 1-11 Well.  Homer Blohm and a representative of Miller Brothers Oil Company appeared at the hearing to contest Amoco's application.  Amoco's request sought to combine the existing 80-acre parcel upon which the Miller-Fox 1-11 Well was situated with the 80-acre parcel immediately to the north,

2

described as the North ½ of the Southwest 1/4, and included in the property covered by the Mineral Deed. On May 9, 1983, the Supervisor of Wells issued an opinion and order granting Amoco's application based upon his finding that the Miller-Fox 1-11 Well would adequately drain the proposed 160-acre unit. Thus, the North ½ of the Southwest 1/4 was added to the existing unit for the Miller-Fox 1-11 Well. The Supervisor of Wells order stated that it addressed only the appropriate spacing for the well and was not a determination of a method of participation or allocation of proceeds, nor was it intended to pool the interests within the unit.

Following the order unitizing the Miller-Fox 1-11 Well, the Blohms entered into various agreements with Miller Brothers Oil Corporation and/or other entities and individuals covering the Southwest 1/4 (or portions thereof) and the Northwest 1/4 of Section 11, Township 13N, Range 18W, Oceana County, Michigan. On March 9, 1984, the Blohms and Miller Brothers Oil Corporation entered into an oil and gas lease of all of the property covered by the Mineral Deed.

On February 1, 1987, Miller Brothers Co-Partnership, the Blohms, and others, executed a Declaration of Pooling (the "Pooling Agreement"), pursuant to which the parties agreed to pool or "unitize" their interests with regard to the Salina-Niagaran Formation underlying the "Southwest Quarter (SW 1/4), Section 11, T13N-R18W, Oceana County, Michigan." The introductory statement of the Pooling Agreement states: "WHEREAS, the above parties are the Owners of the following described Oil and Gas Leases [including the March 9, 1984, oil and gas lease between the Blohms and Miller Brothers Oil Corporation] or own a mineral interest in the" lands covered by the Pooling Agreement. Paragraphs 1 and 2 provide:

> 1. All interests of the parties hereto in the Unitized Substances underlying the Unitized Area are hereby pooled, consolidated and unitized into a single pooled unit for the operation for and the development and production of the Unitized Substances from the Unitized Area.

> 2. Any well drilled on any part of the Unitized Area for the discovery and production of Unitized Substances, *whether now drilling or heretofore or hereafter drilled*, and all operations with respect to any such well, *shall be considered for all purposes, except the payment of royalty, to be a well drilled and operations conducted under the terms of each of the leases described above.*

(Pooling Agreement ¶¶ 1, 2 (italics added).)

On May 21, 1987, the Blohms and Miller Brothers Co-Partnership entered into an oil and gas lease covering the North ½ of the Southwest 1/4 of Section 11 – the 80-acre parcel included in the Mineral Deed that had previously been combined into the 160-acre drilling unit for the Miller-Fox 1-11 Well. In June of 1987, Miller Brothers and other parties filed a discharge of the March 9, 1984, lease.

Subsequently, Conoco, Inc. succeeded to Miller Brothers Co-Partnership's rights under the 1987 oil and gas lease. On January 9, 1989, Conoco and others executed an amendment to the Pooling Agreement (the "Amendment"). Among other things, the Amendment recites that "Conoco owns a 50% of 100% fee mineral interest" in the North ½ of the Southwest 1/4 below the base of the Traverse Lime Formation, Township 13 North, Range 18 West, that "Conoco desires to contribute its fee mineral interest to the pooled unit," and that the parties desired to substitute the 1987 oil and gas lease between the Blohms and Miller Brothers Co-Partnership for the 1984 oil and gas lease between the Blohms and Miller Brothers Oil Corporation.

On September 19, 2006, this Court entered an Opinion and Order denying Defendant's motions for judgment on the pleadings and for summary judgment. Regarding the motion for judgment on the pleadings, the Court rejected Defendant's assertion that Plaintiffs were required to comply with Michigan Court Rule 3.411(C)(2), and it concluded that Plaintiffs had adequately alleged that the amount in controversy exceeded $75,000. Regarding the motion for summary

judgment, the Court concluded that it should be denied because the documents Plaintiffs presented in opposition to Defendant's motion suggested that the parties considered the Miller-Fox 1-11 Well to be a well drilled for purposes of the Mineral Deed and that Plaintiffs had presented sufficient evidence to avoid summary judgment at that point. Thus, the case was allowed to proceed through discovery.

## Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## Discussion

Plaintiffs contend that they are entitled to summary judgment under the law-of-the-case doctrine because the Court decided in its prior opinion that the documents Plaintiffs submitted in their response to Defendant's motion showed that the parties understood that the drilling requirement set forth in the Mineral Deed was satisfied by the Miller-Fox 1-11 Well. The law-of-the-case doctrine provides that, absent extraordinary circumstances, a court should refrain from reconsidering issues that were decided at an earlier stage of the same litigation. *See United States v. Tocco*, 306

F.3d 279, 288 (6th Cir. 2005). "The law of the case doctrine generally discourages courts from reconsidering determinations that the court made in an earlier stage of the proceedings." *United States v. Graham*, 327 F.3d 460, 464 (6th Cir. 2003). In order for the doctrine to apply, however, a court must have decided the issue explicitly or by necessary implication. *See Bowles v. Russell*, 432 F.3d 668, 676-77 (6th Cir. 2005). The doctrine is discretionary when applied to the same court's own decisions. *See id.* at 677 (quoting *Bowling v. Pfizer, Inc.*, 132 F.3d 1147, 1150 (6th Cir. 1998)).

The Court declines to apply the law-of-the-case doctrine because its application would be inappropriate given the circumstances surrounding the Court's prior ruling. At that early stage of the case, Defendant had moved for summary judgment and the issue was whether Plaintiffs' evidence, viewed in a light most favorable to Plaintiffs as the nonmoving parties, was sufficient to create a genuine issue of material fact. The parties had not engaged in discovery and, in fact, the Court had not even held a Rule 16 conference. Given that context, the Court's denial of Defendant's motion was merely a determination that Plaintiffs had presented sufficient evidence to proceed with their claims. At this juncture, however, following discovery, nothing precludes the Court from reassessing the evidence to determine whether it is sufficient to warrant a trial or whether either of the moving parties are entitled to judgment as a matter of law.

As noted in the prior opinion, under Michigan law, the rules of construction for deeds are similar to those for construction of contracts. Where the language of the deed or contract is unambiguous, a court's role is limited to determining the intention of the parties from the four corners of the document by applying the plain meaning of the language used in the document. *See Taylor v. Taylor*, 310 Mich. 541, 545, 17 N.W.2d 745, 746 (1945); *Old Kent Bank v. Sobczak*, 243 Mich. App. 57, 63, 620 N.W.2d 663, 666-67 (2000). The primary goal of interpreting contracts is to ascertain and enforce the parties' intent. *See Flajole v. Gallaher*, 354 Mich. 606, 251, 93 N.W.2d

6

249, 251 (1958). If the language of the instrument is unambiguous, its meaning is a question of law for the court. *See Port Huron Ass'n, MEA/NEA v. Port Huron Area Sch. Dist.*, 452 Mich. 309, 323, 550 N.W.2d 228, 237 (1996). If the language of the instrument is unclear or susceptible to multiple meanings, then interpretation becomes a question of fact. *See id.*

The Mineral Deed provides that the grant is "for a term of 20 years or as long thereafter as oil, gas or other hydrocarbons are being produced or are capable of being produced from wells drilled during the 20 year term." There is no dispute that this language means that the interest granted by the Mineral Deed would revert to the Blohms unless at least one well capable of producing oil or gas were drilled on the property covered by the Mineral Deed during the 20-year term. (Pl.'s Br. Supp. Mot. at 11; Blohm Aff. ¶ 11.) Moreover, it is undisputed that no well was drilled on the property covered by the Mineral Deed during the 20-year term. Thus, unless the parties agreed otherwise, the interest reverted to the Blohms upon the expiration of the twenty-year period, on April 16, 2003.

Plaintiffs contend that various instruments that the Blohms executed subsequent to the Mineral Deed show their intent that the Miller-Fox 1-11 Well would suffice as a well drilled on the property and thus suffice to fulfill the condition for extending the term of the Mineral Deed. A party alleging modification of a written instrument has the burden of proving the modification. *See Dault v. Schulte*, 31 Mich. App. 698, 702, 187 N.W.2d 914, 916 (1971). Modification of a contract term requires proof of mutual assent. *See Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 372-73, 666 N.W.2d 251, 258 (2003). "[W]here there is no mutual agreement to enter into a new contract modifying a previous contract, there is no new contract and, thus, no modification. Simply put, one cannot unilaterally modify a contract because by definition, a unilateral modification lacks mutuality." *Id.*

7

Plaintiffs rely solely upon the March 9, 1984, oil and gas lease, the February 1, 1987, Pooling Agreement, the May 21, 1987, oil and gas lease, and the January 9, 1989, Amendment to the Pooling Agreement. Notwithstanding its prior opinion, the Court concludes that these documents are insufficient to demonstrate the requisite mutual assent by the parties to modify the Mineral Deed to provide that the Miller-Fox 1-11 Well would satisfy the condition of a well drilled during the 20-year term.

The March 9, 1984, lease covers the same property as the Mineral Deed, but nothing in that instrument mentions the Mineral Deed or the interest conveyed thereunder. While it is true, as the Court noted in its earlier opinion, that the lease conveyed the Blohms' reversionary interest in the Mineral Deed, that connection is too attenuated to show a mutual agreement to modify the Mineral Deed. That is, nothing suggests that the parties drew a connection between the Mineral Deed and the lease. The same is true for the May 21, 1987, oil and gas lease, which covered less than half the property included in the Mineral Deed.

The February 1, 1987, Pooling Agreement provides Plaintiffs' strongest argument, yet, it does not expressly mention the Mineral Deed. The Pooling Agreement contains a general statement that some of the signatories "own a mineral interest" in the area covered by the Pooling Agreement, but nothing in this statement suggests that it was intended to refer to the Mineral Deed. The Pooling Agreement also contains two provisions concerning the drilling of wells on the Unitized Area (the Southwest 1/4). The first says that "[a]ny well drilled on any part of the Unitized Area . . . shall be considered for all purposes . . . to be a well drilled and operations conducted under the terms of each of the *leases* described above." (2/1/87 Pooling Agreement at 1, ¶ 2 (emphasis added).) The second says that "Miller Brothers Co-Partnership shall not be obligated to drill any well or wells on any part of the Unitized Area for the *purposes of protecting said part from drainage by reason of any well*

8

*or wells located on any other part or parts of the Unitized Area producing Unitized Substances . . . .*" (*Id.* at 2, ¶ 5.) Plaintiffs' reliance upon the first provision fails because it speaks of a well drilled for purposes of the leases, not the Mineral Deed. Again, any connection between the Blohms' reversionary interest conveyed in the March 9, 1984, oil and gas lease and the Mineral Deed is too tenuous to show the Blohms understood that the reference to the leases included and thus modified the Mineral Deed. Similarly, the second provision is not evidence of an agreement to modify the Mineral Deed because, while it says that Miller Brothers Co-Partnership has no obligation to drill a well on any part of the Unitized property (including the part covered by the Mineral Deed), Miller Brothers Co-Partnership is relieved of any such obligation only for purposes of protecting that part from drainage caused by the Miller-Fox 1-11 Well and not for purposes of any separate obligation under the Mineral Deed.[1]

The final document, the January 9, 1989, Amendment to the Pooling Agreement, refers to the interest granted in the Mineral Deed, which, by that time was apparently held by Conoco, Inc.[2] It does so, however, only to note that Conoco intended to contribute its fee mineral interest to the pooled unit. Although the Amendment does not specifically reference the Mineral Deed, the description of Conoco's interest shows that it includes part of the property covered by the Mineral Deed. The fact that Conoco desired to contribute this interest suggests that Conoco, the successor

---

[1] Another problem with Plaintiffs' reliance upon the Pooling Agreement is that it refers to Miller Brothers Co-Partnership and not Miller Brothers Oil Corporation. The Mineral Deed was given to the corporation, not the partnership, and Plaintiffs have cited no evidence showing that the corporation had assigned the Mineral Deed to the partnership at the time the Pooling Agreement was executed. The March 9, 1984, oil and gas lease was given to the corporation, but the corporation was not a party to the Pooling Agreement. It is possible to infer that the corporation had assigned the lease to the partnership because the Pooling Agreement indicates that the partnership has an interest in the lease, including an obligation to drill a well under the lease. The same cannot be said for the Mineral Deed, however, given the absence of any reference to that instrument.

[2] Defendant contends that the Pooling Agreement had been terminated prior to the date of the Amendment. Although there is some merit to this argument, the Court will assume that the Pooling Agreement remained in effect because the termination issue is unnecessary to its analysis.

to Miller Brothers' interest, believed that the Mineral Deed had not been a part of the Pooling Agreement. The fact that Conoco added its fee interest to the Pooling Agreement did nothing to alter the terms of the Mineral Deed. A more fundamental problem with Plaintiffs' reliance upon the Amendment to demonstrate the Blohm's intent to modify the Mineral Deed is that there is no evidence that they ever signed it and adopted its terms as an expression of their intent. In fact, according to Defendant, after the 20-year term of the Mineral Deed expired, Omimex Energy or its representative requested the Blohms to sign the Amendment, but they apparently refused to do so. (Blohm Aff. ¶ 21 & Ex. 12.)

   Plaintiffs contend that the above-referenced instruments, considered together, show that: (1) the parties intended to create a single, pooled unit for production of oil and gas from the Miller-Fox 1-11 Well; (2) the parties intended that well to be the only well drilled within the pooled unit and that Miller Brothers be relieved of any obligation to drill another well; and (3) the property included in the pooled unit included at least part of the interests conveyed under the Mineral Deed. Plaintiffs contend that these facts show that the parties intended the Miller-Fox 1-11 Well to satisfy the drilling requirements under the Mineral Deed. As noted above, however, the parties mentioned the oil and gas lease but never mentioned the Mineral Deed, even though Miller Brothers and the Blohms were fully aware of its existence and terms. If the parties had in fact intended that the Miller-Fox 1-11 Well would satisfy the drilling requirement of the Mineral Deed, they could have easily said so in the Pooling Agreement, as they did for the lease. On the other hand, the backdrop surrounding the execution of the Mineral Deed is that Miller Brothers Oil Corporation and the Blohms were both aware of Amoco's pending application to establish the 160-acre drilling unit. It can be inferred from their joint opposition to that application that they knew if it were granted, no well could be drilled during the 20-year term, at least on the 80 acres included in the drilling unit covered by the Miller-

Fox 1-11 Well. Miller Brothers' failure to provide for this possibility in the Mineral Deed suggests that the parties intended that a well would be drilled upon the Blohm's property – a fact that must be considered along with Plaintiffs' documentary evidence.

Neither party has cited a case from Michigan addressing whether a well located on a particular parcel and producing oil or gas can extend a term mineral interest on another land when both parcels are part of a pooled unit. The Court has read *Classen v. Federal Land Bank of Wichita*, 228 Kan. 426, 617 P.2d 1255 (Kan. 1980), cited by Plaintiffs, which held that production from a well on a separate piece of property served to extend the term mineral interest on another parcel in the pooled unit. In *Classen*, the conveyance to the plaintiffs reserved "an undivided one-fourth (1/4) of all oil, gas and other minerals and mineral rights . . . for a period of twenty (20) years from and after April 25, 1941, . . . and so long thereafter as oil, gas and/or other minerals or any of them are produced therefrom or the premises are being developed or operated." *Id.* at 427, 617 P.2d at 1257 (internal quotations omitted). Subsequently, the plaintiffs entered into an oil and gas lease with a third party for part of the property covered by the reserved term interest. The defendant also entered into a separate lease with the third party covering the same property. Thereafter, the parties pooled and unitized both leases with other leases to form a consolidated leasehold estate. The Supreme Court of Kansas held that production from one parcel of land in the production unit fulfilled the condition for extending the term interest beyond its 20-year term, even though the well was located on another piece of property in the production unit. *Id.* at 434, 617 P.2d at 1261-62. In doing so, the Court overruled its previous decision in *Smith v. Home Royalty Association, Inc.*, 209 Kan. 609, 498 P.2d 98 (1972). The court observed that various policies would be furthered by "the rule that whenever a term mineral interest is voluntarily placed in a unit for the production of gas or oil and production is obtained on other land within the unit during the primary term, such production will

extend the term mineral interest to the extent of the land and mineral interests included within the producing unit." *Id.* at 435, 617 P.2d at 1262. The reasoning in *Classen* is persuasive, however, the rule it announced is not applicable in this case. First, the court prefaced its holding by affirming three basic principles, one of which was that "[t]he event which perpetuates the term of the mineral interest must be found in the instrument creating it." *Id.* at 434, 617 P.2d at 1262. The language of the reservation in *Classen* provided that the term would be extended so long as oil or gas was being produced from the premises. In contrast, in this case the term of the Mineral Deed would only be extended if "oil, gas or other hydrocarbons are being produced or are capable of being produced from wells drilled *during the 20 year term*." (Emphasis added.) Thus, production from a well on another parcel within the drilling unit could extend the term of the Mineral Deed, but only if it were from a well drilled during the primary 20-year term. Production from the Miller-Fox 1-11 Well does not satisfy this condition. Second, *Classen* is factually different from this case in one material aspect. That is, in *Classen*, the defendant leased its term interest to the third party and then consented to have that interest placed in a pooled unit. Here, Miller Brothers Oil Company obtained a term interest from the Blohms but did not place that interest in the pooled unit under the Pooling Agreement. Rather, it placed its interest under the March 9, 1984. oil and gas lease in the pooled unit. Although Conoco, the successor to the Mineral Deed, sought to place the term interest in the pooled unit pursuant to the Amendment, as noted above, there is no evidence that the Blohms ever signed the Amendment.

While Plaintiffs' documentary evidence could, along with other evidence such as affidavits or deposition testimony, provide a basis for finding a modification of the Mineral Deed, alone it is insufficient for Plaintiffs to meet their burden. Accordingly, Plaintiffs have failed to present sufficient evidence to create a genuine issue of material fact.

12

**Conclusion**

For the foregoing reasons, the Court will deny Plaintiffs' motion for summary judgment and grant Defendant's motion for summary judgment.

An Order consistent with this Opinion will be entered.


Dated: November 15, 2007                               /s/ Gordon J. Quist
                                                      GORDON J. QUIST
                                              UNITED STATES DISTRICT JUDGE